## In re OPINION OF THE JUDGES.
## In re J. D. TUGGLE.

No. A-9902.   July 25, 1940.
(104 P. 2d 726.)

84

DOYLE, P. J. It appears from the record submitted, that on May 17, 1940, a complaint was filed in the county court of Garvin county, charging J. D. Tuggle with the murder of one Sadie Jones, in said county on the 10th day of May; and on the same day the defendant, J. D. Tuggle, was by information filed in the district court of Garvin county, on May 17, 1940, charged with the murder of one Sadie Jones, alleged to have been committed in said county on the 10th day of May, 1940, by striking the said Sadie Jones with an axe handle, thereby inflicting mortal wounds, of which mortal wounds so inflicted said Sadie Jones did on said day die.

It also appears from the record that on May 20, 1940, a complaint was filed in the county court of Garvin county, charging J. D. Tuggle with the murder of one D. Wilburn Jones, in said county on the 10th day of May; on the same day said defendant, J. D. Tuggle, was, by information filed in the district court of said county, charged with the murder of one D. Wilburn Jones, alleged to have been committed in said county on the 10th day of May, 1940, by striking said D. Wilburn Jones with an ax handle, thereby inflicting certain mortal wounds of which wounds so inflicted said D. Wilburn Jones did on the 17th day of May, 1940, die.

It further appears from the record before us that on May 17th the defendant upon arraignment in the first case

asked the court to appoint counsel to represent him, and the court appointed McCaughey, Ewart and Bowie as defense attorneys, and the case was continued until May 20th, at which time counsel appointed by the court to represent the defendant asked leave to withdraw, which was granted.

The defendant was then arraigned upon the second information, and the court stated:

"You are entitled in this case, as I explained to you in the other case the other day to a lawyer at every stage of these proceedings. It was said then you were unable to hire a lawyer, you of course wanted the court to appoint you a lawyer."

The defendant:

"Judge, I would like to ask the court a question, if possible. In the event that I would plead guilty to both charges, will the court accept responsibility of sentencing me without the trial?"

Thereupon the defendant was fully advised by the court of his constitutional and statutory rights and the consequences of a plea of guilty, and concluded by stating:

"I will appoint another lawyer in this case if you want one."

The defendant stated:

"In the event that I make by own plea here, when can I enter a plea in this other case?"

The court:

"You can—Time has been set at 2 o'clock this afternoon for your time to plead in the other case. You can enter your plea in both cases now if you like."

The defendant answered:

"I would like to enter a plea of guilty in both cases and I will accept the fate."

The court:

"You understand that in entering your plea of guilty in these cases that you are waiving your right to an attorney, do you?"

"You understand further that you are waiving your right in each case to a trial by jury?"

To which the defendant answered:

"Yes, however, your honor, I would like to say before the court or have the statement read before the court that I signed for the county attorney as a reason for this, and maybe that, even though I go to the electric chair, maybe this will prevent something of this kind from happening again. The Court: How old did you say you were? A. I am 21. Q. Are you an orphan boy? A. No, sir. Q. Where do your parents live? A. My mother lives in McAlester and my father over near Homer schoolhouse in Pontotoc county. Q. How long have they been separated? A. Ever since I was two and a half years old. Q. By whom were you reared? A. By my mother and stepfather."

His examination by the court concluded as follows:

"All of these things in view now, what is your idea with reference to the case that we now have up for consideration, do you still want to waive the appointment of a lawyer? A. Yes, sir. The Court: The information having been read to you, you are ready at this time to enter your plea or do you want to wait 24 hours? A. I am ready at this time. The Court: I have explained you have a right to a jury trial, if you plead not guilty. If you plead guilty, it will be the court's duty to sentence you either to life imprisonment or to death in the electric chair. What is your plea? A. Guilty as charged. The Court: All right, I will accept your plea of guilty. Let me say just this. The time has passed now for you to enter your plea in the other case, and that is the case where I appointed Mr. Moody and Mr. Bowie and Mr. Ewart to defend you. Don't let the fact that these attorneys have withdrawn prejudice your mind with respect to the idea of whether or not this court will see that you get a fair trial."

And continuing, repeated the advice given to the defendant as to his constitutional and statutory rights, concluding as follows:

"Now with that statement in mind, will you prefer that I appoint you other counsel or do you want to represent yourself? I am just trying to help you. The defendant: Yes, sir. I appreciate that, but I believe I would rather plead guilty to both charges and waive everything. The Court: In the case wherein you are charged with the murder of Sadie Jones, you want to waive the right of appointment of an attorney? A. Yes, sir. Q. You have heretofore been given 24 hours time in which to plead, and you are now here for arraignment. At this time you may enter your plea of guilty or not guilty, in the light of the information and advice I have given you about your constitutional rights. If you plead guilty, it will be my duty to pass sentence on you, as I indicated a few minutes ago. If you plead not guilty, you will be entitled to a trial by jury and it will be my duty to see that you have a fair and impartial trial. Are you ready to enter your plea at this time? A. Yes, sir. Q. Is your plea guilty or not guilty? A. Guilty as charged. The Court: I will accept your plea of guilty. The Court: Do you know of any reason that sentence should not be passed upon you at this time? A. None, other than the fact that I would like a chance to, as I stated before, state a possible reason for this act of violence that I have committed. The Court: You want to do that before sentence is passed upon you? A. Yes, sir. If the court does not grant me that privilege, I am ready to receive my sentence. The Court: I am going to grant your request. I will hear your statement."

The transcript of the defendant's statement covers 14 pages of the record.

We do not deem it necessary to enter into the sordid and revolting details of the defendant's confession and statement, as you will no doubt acquaint yourself with the facts and circumstances of the commission of the murders charged.

Thereafter, on May 23rd, another hearing was had, at which time Sam J. Goodwin, county attorney, appeared for the state. The defendant, J. D. Tuggle, appeared in person and by counsel, J. T. Blanton.

The defendant accepts the appointment of Mr. J. T. Blanton as his attorney, sentence day deferred until June 3, 1940. Thereafter, on June 3rd, the following proceedings were had:

"The Court: Mr. Blanton, inasmuch as I have appointed you to represent Mr. Tuggle, I presume you will do the talking. Mr. Blanton: If the Court please, Mr. Tuggle has decided that he will still let his plea of guilty stand, notwithstanding the conversation I had with you. I just consulted him in the last few minutes and he stated that he would let his plea stand, that is, his plea of guilty. The Court: Mr. Blanton told me this afternoon, Mr. Tuggle, that you had decided to withdraw your plea of guilty to the charge of murder in each case, 2265 and 2268, but here in open court just a minute ago you stated through your attorney that your present intention and desire is to allow your plea of guilty in each case to stand. Is that correct? The Defendant: Yes, sir. You are guilty? A. Yes, sir. Q. Mr. Tuggle, do you know of any reason that sentence should not be passed upon you at this time? A. No, sir. The Court: I have made, I believe more than a reasonable effort to determine the true status of your mind at the present time and at the time of the commission of this crime. The person to whom I alluded by making a statement that I was going to interview him with reference to the matter of your mentality, to wit, Doctor Griffin, head of the State Hospital at Norman, was out of Norman for an indefinite stay, however, I got to talk to Doctor Rayburn, his assistant, who has been a doctor in that institution and an authority on abnormalities of the mind for 15 years or longer. The Doctor tells me that your mind is such that it might become unstable, but, however, on the occasion of the crime that you were in possession of your mental faculties."

The court again fully advised the defendant of his rights, concluding as follows:

"It will be the judgment and sentence of this court that in accordance with the laws of this state, you be, within ten days, by the sheriff of this county transported to the state penitentiary at McAlester, Oklahoma, and that upon Wednesday, August 28, 1940, the warden of said institution inflict upon you the death penalty as provided by the laws of the state of Oklahoma, by electrocution in each of the cases, 2265 and 2268, and may God have mercy on your guilty, guilty soul."

The Court: Ordered that the court reporter prepare transcript for transmittal to the Governor.

It is to be noted that the transcript of the record submitted by you is properly certified to by Ed Craig, Jr., court clerk of Garvin county. In addition thereto there appears a certificate by Ben T. Williams, district judge, that the same is a full, true and correct case-made and transcript, with direction that it be attested and filed by the clerk of said court.

Our Code of Criminal Procedure provides:

"The judge of a court at which a conviction requiring a judgment of death is had, must immediately after the conviction, transmit to the Governor, by mail or otherwise, a statement of the conviction and judgment, and of the testimony given at the trial." § 3171, 22 Okl.St.Ann. § 1002.

And further provides: "The Governor may thereupon require the opinion of the judges of the Criminal Court of Appeals, or any of them, upon the statement so furnished." Section 3172, 22 Okla. St. Ann. § 1003.

It is well settled that the last above-quoted provision contemplates that an advisory opinion of the judges may be given to the Governor, when an appeal has not been taken in a capital case from a judgment and sentence of death.

The proposition then presented would be, Has there been an observance of all the formalities of law essential to the taking of human life, and has the trial, conviction, and sentence of death been in accordance with the law of the land? Opinion of the Judges, 3 Okla.Cr. 315, 105 P. 684; Opinion of the Judges, 6 Okla. Cr. 210, 118 P. 156.

Penal Code, sec. 2222, 21 Okla.St.Ann. § 707, provides as follows:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the state penitentiary for life, at the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith. But upon a plea of guilty the court shall determine the same."

The first question presented for our consideration is whether, according to a proper judicial construction, the concluding clause of the above section authorizes the district court to pronounce and enter a judgment of death upon a defendant's plea of guilty, or whether, on the contrary, it is necessary under the statute to submit the question whether he shall be punished by death or imprisonment for life at hard labor to the discretion of a jury.

There is no reason why this provision of the Penal Code is not constitutional and valid. A conviction of crime may be had in three ways; either by the verdict of a jury, or by findings of fact, by the judge where a jury is waived, sec. 20, art. VII, Const., Okla.St.Ann., or by a plea of guilty. Where a defendant who is indicted or informed against for a capital crime in a court of competent jurisdiction pleads guilty, the court is authorized to pronounce judgment and sentence against such defendant according

to law. The authority thus granted is not in any degree affected or controlled by the previous provisions contained in said § 2222, supra, that:

"Every person convicted of murder shall suffer death, or imprisonment at hard labor in the state penitentiary for life, at the discretion of the jury."

And that:

"Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith."

The foregoing provisions apply only to cases where there is a trial upon an indictment or information for murder on a general plea of not guilty.

It is evident that the foregoing provisions of our Penal Code were not designed to abrogate the well-established rule of the common law, by which a party indicted for an offense, however grave in nature, may enter a plea of guilty thereto, if he sees fit so to do. In such cases there is no issue to be submitted to a jury on which a verdict can be founded. All that the court is required to do is to render judgment and sentence imposing punishment as prescribed by law for the crime committed. Opinion of the Judges, 6 Okla. Cr. 18, 115 P. 1028; Opinion of the Judges, 18 Okla. Cr. 20, 192 P. 597.

The Bill of Rights provides that:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed. * * * He shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the indictment or information,

together with their postoffice addresses." Okla. St. Ann. Const. art. 2, § 20.

From the record it appears that the complaint in the first case was filed before R. B. Garvin, county judge of Garvin county, sitting as an examining and committing magistrate on May 17, 1940. On the same day the defendant waived a preliminary examination and was held to answer to the district court. On the same day an information was filed in the district court, and on the same day the defendant was arraigned in said district court.

It also appears that the complaint in the second case was filed before R. B. Garvin, county judge of Garvin county, sitting as an examining and committing magistrate on May 20, 1940. A preliminary examination was held to answer in the district court. On the same day an information was filed in the district court of Garvin county, and on the same day defendant was arraigned in the district court, and waived his constitutional and statutory rights and entered a plea of guilty as charged in the information.

The record affirmatively shows the personal waiver on the part of the defendant of his constitutional and statutory rights, and that following the appointment of counsel by the court in each case he again waived his constitutional and statutory rights.

In the case of Starr v. State, 5 Okla. Cr. 440, 115 P. 356, 367, we said:

"Generally speaking, the constitutional provisions guaranteeing to every accused person in a criminal action certain rights may be separated into two classes. First, those in which the public generally, and as a community, is interested, as well as the accused, and which are jurisdictional as affecting the power of the court to try the cause, second, those more in the nature of privileges which

are for the benefit of the accused alone, and do not affect the general public. The former cannot be waived. Jurisdiction to try the cause is conferred by the law. Consent cannot confer jurisdiction, but the accused may waive a constitutional right or privilege designed for his protection, where no question of public policy is involved. The public as well as the accused have an interest in every criminal trial. The life and liberty of the citizen is a matter of supreme importance to the state, and it should not allow him to throw either away by a failure, intentional or otherwise, to take advantage of his constitutional safeguards. It will not do, however, to say that because the state has a peculiar interest in protecting the citizen accused of crime to the extent of his constitutional rights that he shall in no case be allowed to waive them, for in some cases it may be to his interest to waive them, and the denial of the right to do so would defeat the very object in view when the rights were given, and cause them to operate to the injury rather than to the benefit of the accused."

To the same effect is Blagg v. State, 36 Okla. Cr. 337, 254 P. 506; Howington v. State, 30 Okla. Cr. 243, 235 P. 931.

Where it appears from the record, as in this case, that a defendant has been fully advised as to his constitutional and statutory rights, and as to the consequences of his plea, and that with such knowledge he deliberately enters a plea of guilty, the trial court is justified in accepting it, even in a capital case.

From that careful examination and consideration of the record transmitted by you our advisory opinion is that the necessary legal steps and proceedings were taken in this case essential to the taking of human life under a charge of murder; that the defendant was accorded the benefit of all constitutional and statutory rights not specifically waived by him; and that his conviction and sen-

tence of death has been in accordance with the law of the land.

While no motion for a new trial or in arrest of judgment was interposed in behalf of the defendant in these cases, the Code of Criminal Procedure, sec. 3189, 22 Okla. St. Ann. § 1051, provides that appeals to this court may be taken by a defendant as a matter of right from any judgment rendered against him.

An appeal in a criminal case is taken by filing in this court, with petition in error attached, either a duly certified case-made or a duly authenticated transcript of the record. An appeal in a felony case may be taken at any time within six months after the rendition of the judgment. Section 3192, 22 Okla. St. Ann. § 1054.

An appeal may be taken by the service of the notices on the clerk of the court and prosecuting attorney as provided by section 3193, 22 Okla. St. Ann. 1055, or else by the issuance and service of summons in error as provided by section 3198, 22 Okla. St. Ann. § 1060.

It is apparent, therefore, from the foregoing statutory provisions that in this case the defendant has six months within which to file an appeal in this court from the judgment and sentence of death rendered against him in these cases. Such an appeal may be taken by filing a duly authenticated transcript of the record proper as filed with the Governor in these cases, to which may be attached a petition in error. The defendant therefore would have until the 4th day of December, 1940, in which to take an appeal by filing a duly authenticated copy of the record with petition in error attached and proof of service of notices of appeal.

In Hutchins v. State, 13 Okla. Cr. 717, 167 P. 388, 339, it is said:

"Under the Constitution and laws of this state an appeal may be taken by the defendant as a matter of right from a judgment of conviction in a criminal prosecution against him, and he is entitled to have this court review the proceedings had upon his trial and conviction when such appeal is taken according to law. Every citizen should feel and know that under our Constitution and laws there is no one so rich and powerful as to be above the just penalties of the law, and no one so poor and helpless as to be beneath its complete protection."

Our Code of Criminal Procedure provides:

"When judgment of death is rendered, the judge must sign and deliver to the sheriff of the county a warrant duly attested by the clerk, under the seal of the court, stating the conviction and judgment and appointing a day on which the judgment is to be executed, which must be not less than sixty nor more than ninety days from the time of the judgment and must direct the sheriff to deliver the defendant within ten days from the time of judgment to the warden of the state prison at McAlester, in this state, for execution." Section 3170, 22 Okla. St. Ann. § 1001.

It will be noticed that the last-quoted statutory provision requires the trial judge to appoint a day on which the judgment of death is to be executed, which must not be less than 60 nor more than 90 days from the time of the rendition of the judgment. The trial judge has no discretion to appoint a day beyond the 90 days from the rendition of the judgment upon which the death sentence shall be carried into effect. The maximum period allowed by the trial judge is therefore at least 90 days less than the time allowed by the law in which a defendant may exercise his statutory right of appeal to this court, and if a defendant, convicted and sentenced to suffer death, should be executed prior to the time allowed by statute within which he may appeal to this court, he could thereby be deprived of the review of certain questions of law by this court which could properly be raised in an appealed case

and not subject to review in an advisory opinion to the Governor. Opinion of the Judges, 18 Okla. Cr. 20, 192 P. 597; Noel v. State, 17 Okla. Cr. 308, 188 P. 688. The Code of Criminal Procedure, sec. 3173, St. 1931, 22 Okla. St. Ann. § 1004, provides as follows:

"No judge, court or officer, other than the Governor, can reprieve or suspend the execution of the judgment of death, * * * unless an appeal is taken."

Under the statute and under the present status of these cases, it is a matter entirely discretionary with you, as Governor of the State of Oklahoma, to grant a reprieve or suspend the execution of the death sentence in these cases, until after December 4, 1940, on which date the defendant's right of appeal will expire.

BAREFOOT and JONES, JJ., concur.